W. HORACE HOSKINS et al.

*v.*

SEASIDE ICE MANUFACTURING AND COLD STORAGE COMPANY.

[Decided January 12th, 1905.]

1. Where a corporation had power to purchase its own stock, and to pay therefor with its bonds, and bonds payable to bearer were so issued, the corporation was estopped to deny their validity, as against innocent purchasers for value.

2. A holder of bonds of a corporation, taken as collateral for a pre-existing debt, is a *bona fide* holder for value to the same extent as though he was a purchaser for cash.

On appeal from determination of receiver.

*Mr. Norman Grey,* for R. T. Miller, the receiver.

*Mr. Joseph S. Conover* and *Mr. Philip Carpenter* (of the New York bar), for the petitioning bondholders.

BERGEN, V. C.

The questions presented for determination arise under the petition of certain bondholders appealing from the determination of the receiver of the defendant corporation disallowing certain claims presented by them against the estate of the insolvent defendant. The receiver conceives that the questions involved are sufficiently presented by the petition, affidavits,

receiver's reasons, and other records in the cause which have been submitted by the respective parties, and therefore declines formal answer. While the usual practice in matters of this character is to require the petitioner to take a rule on the receiver requiring him to answer the petition, and the taking of such testimony as may be required to fairly present the issue, the Corporation act directs the court of chancery to hear appeals of this character in a summary way, and if, as in this case, the receiver consents to the consideration and determination of the matter without answer, I have no doubt of the propriety of proceeding to hear and dispose of the subject of appeal without answer. The facts necessary to a proper consideration of the question presented are as follows: Louis F. Darmstadt holds six bonds of the defendant corporation of the par value of $500 each, numbered from 49 to 55, inclusive. John Scholl and William, his brother, trading as John Scholl & Brother, hold two bonds of like character, numbered 47 and 48. These bonds are in form payable to bearer without limitation or qualification of the negotiable quality usually appertaining to bonds of that description.

Mr. Darmstadt acquired whatever title he has under the following circumstances: On January 21st, 1903, John B. Fitzgerald pledged and delivered to him two of these bonds as collateral security for the payment of a loan, previously made, maturing on that day, of $1,382, represented by two notes, one for $400 and the other for $982, which still remain unpaid, and, together with the bonds, are in the hands of the pledgee.

On June 28th, 1904, Fitzgerald induced Darmstadt to endorse his note for $1,000, securing him against loss by pledging, as collateral security, two other such bonds. This note was subsequently reduced by payments to $800, which amount still remains due, and in July, 1904, Edward L. Fitzgerald borrowed from Darmstadt $50, and deposited with him as collateral security for the payment of said loan two of such bonds. The bonds held by John Scholl & Brother were deposited with them by John B. Fitzgerald January 8th, 1904, as security for a loan of $1,000, which loan is due and still remains unpaid. Darmstadt and Scholl presented their respective bonds to the receiver as

debts against the company, and the rejection of such claims by the receiver is the basis of this appeal.

Some of the reasons filed by the receiver as a justification for his determination, and which are all that it is necessary now to consider, are as follows: That the bonds were never legally issued to the two Fitzgeralds, because they took them in exchange for stock of the company surrendered by them, and being directors of the corporation, knew that the bonds could not be issued to any stockholder for stock, nor for any purpose other than that for which the issue was authorized; that they, as directors, by the exchange of stock for bonds, were obtaining a position in relation to the assets of the company better than that enjoyed by the other stockholders, which their duty as trustees forbid; that the corporation was insolvent when the bonds were issued; that the issue was a transfer of property prohibited by the Corporation act, and that the present holders were not purchasers for value.

The authority of the corporation to issue these bonds is beyond question, and they were issued as the obligations of the company in due form, with the expectation that their payment was to be secured by a mortgage upon the property of the company. This security was attempted to be provided, but through some informality in the preparation or recording of the mortgage, it became useless as a security and left the bondholders in the position of general creditors without preference.

There was no proof presented to me from which I can find that the corporation was insolvent when the bonds were issued; on the contrary, the affidavits submitted show that the officers had not at the time any reason to suspect insolvency, nor that it was likely to occur, and it is certainly demonstrated beyond question that the present holders had no knowledge of any such insolvency, either present or threatened. What appears is that this company issued its negotiable obligations, which passed to third persons before maturity in due course of business, without knowledge by them of any infirmity. Some were taken as security for debts matured and others as a consideration for loans then made or liability assumed. Without determining the question as to the *bona fides* of the directors in procuring these

bonds, it is enough to say that this company had the right to purchase its own stock and to pay for it in bonds, and there is no evidence before me to sustain the theory that such exchange was made for any unlawful purpose, and by the testimony and papers offered I am satisfied that these bonds were lawful obligations of the company in the hands of the original bondholders. That they are such in the hands of the present holders is too plain for profitable discussion; the bonds are the contract of the company whose assets the holders now ask may be applied for their liquidation, and it does not lie in the mouth of this company to now question its obligations or the consideration which it voluntarily accepted for them. If the bonds were fraudulently procured, and a valueless security corruptly put upon the company, a proceeding on its behalf against the original holders to have the sale of the bonds set aside might, under proper conditions, meet with favor, but there is no pretence that any such condition existed, and if the company overvalued its own stock and put in circulation its negotiable obligations in payment therefor, it is too late now to complain when innocent persons have accepted them for what the corporation said they represented. The obligations were coupon bonds payable to bearer, carrying the usual qualities of commercial paper, and as such are enforceable in the hands of innocent persons (*Hebberd* v. *Southwestern Company, 55 N. J. Eq. (10 Dick.) 18;* nor does the fact that some of these bonds were taken as collateral security for an existing debt make the holder any less a *bona fide* holder for value than if he was a purchaser for cash. *Allaire* v. *Hartshorne, 21 N. J. Law (1 Zab.) 665; Armour* v. *Mc-Michael, 36 N. J. Law (7 Vr.) 92; Oliphant* v. *Vannest, 58 N. J. Law (29 Vr.) 162.* The determination of the receiver should therefore be overruled and the claims of these appellants accepted as debts by the insolvent corporation.